# Illinois Official Reports

## Appellate Court

*Sommese v. American Bank & Trust Co., N.A.*, 2017 IL App (1st) 160530

| | |
|---|---|
| Appellate Court Caption | FRANK SOMMESE III, Plaintiff-Appellant, v. AMERICAN BANK & TRUST COMPANY, N.A., Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-16-0530 |
| Filed<br>Rehearing denied | May 5, 2017<br>October 2, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-L-008180; the Hon. Sanjay Tailor, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Law Office of Terrence Buehler, of Chicago (Terrence Buehler, of counsel), and Offit Kurman, P.A., of Maple Lawn (Ari Karen and April Rancier, of counsel), for appellant.<br><br>Baker Hostetler LLP, of Chicago (Melissa A. Siebert, of counsel), and Pappas O'Connor, P.C., of Rock Island (Cameron A. Davidson and Jeffrey D. Wright, of counsel), for appellee. |
| Panel | JUSTICE LAMPKIN delivered the judgment of the court, with opinion.<br>Presiding Justice Gordon and Justice Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1          Plaintiff, Frank Sommese III, appeals the order of the circuit court dismissing his claim against defendant, American Bank & Trust Company, N.A., to recover statutory damages and attorney fees pursuant to the Illinois Wage Payment and Collection Act (Act) (820 ILCS 115/1 *et seq.* (West 2010)). Plaintiff contends his damages claim should not have been barred because it was filed after the effective date of the 2011 amendments to the Act and, therefore, did not require retroactive application thereof. Plaintiff additionally contends the circuit court erred in rejecting his claim for attorney fees pursuant to the doctrine of collateral estoppel. Based on the following, we affirm.

¶ 2                                          FACTS

¶ 3          Plaintiff was employed by defendant from April 29, 2008, to December 20, 2010. On January 19, 2011, plaintiff filed a complaint[1] in Iowa, in relevant part, alleging that defendant breached the parties' employment agreement by failing to pay him the entirety of his outstanding wages and that defendant violated the Act by failing to pay those wages. The action was filed in Iowa pursuant to the forum selection clause in the employment agreement. Plaintiff, however, was an Illinois employee and resident. On September 28, 2012, the Iowa court entered an order granting defendant's motion for partial summary judgment and dismissing plaintiff's claim under the Act as an impermissible extraterritorial application of said Act. The breach of contract action proceeded to a jury trial. Ultimately, on December 14, 2012, the Iowa jury entered a verdict in plaintiff's favor for $997,274.16, finding defendant breached the parties' employment agreement. The Iowa court denied defendant's motion for judgment notwithstanding the verdict or for a new trial, and defendant appealed. Plaintiff did not appeal the dismissal of his claims under the Act. The Iowa appellate court affirmed the lower court's ruling along with the jury verdict on November 13, 2014. In December 2014, defendant paid the judgment with interest to plaintiff.

¶ 4          Meanwhile, on July 20, 2012, plaintiff filed an action in the circuit court of Cook County alleging defendant violated the Act by failing to pay his earned wages during his employment, requesting payment of the outstanding wages, liquidated damages, and attorney fees pursuant to section 14(a) of the Act. On May 22, 2014, the circuit court entered an order granting partial summary judgment in favor of plaintiff on the matter of liability for the outstanding wages, applying the doctrine of collateral estoppel based on the Iowa jury verdict.

¶ 5          Thereafter, on July 14, 2014, plaintiff filed a petition for attorney fees and costs associated with both the Iowa and Illinois actions. Plaintiff requested reimbursement of nearly 2800 hours in attorney fees, the vast majority of which pertained to the Iowa action. On March 16, 2015, the circuit court denied plaintiff's request for attorney fees associated with the Iowa action. In so doing, the circuit court again applied the doctrine of collateral estoppel but concluded that collateral estoppel precluded plaintiff from obtaining fees for a claim dismissed at the summary judgment stage by the Iowa court "on the basis that the plaintiff could not state a cause of action insofar as he was seeking to apply the statute extraterritorially." The circuit court directed plaintiff to file a petition limited to those fees incurred in the Illinois action.

_____

[1]The complaint was later amended.

¶ 6    In response, on April 10, 2015, plaintiff filed a motion for statutory damages and attorney fees and costs pursuant to section 14(a) of the Act, seeking 2% statutory damages from January 1, 2011, until December 23, 2014, the date when defendant paid the outstanding wages, along with attorney fees and costs associated with the Illinois action. The total amount of requested statutory damages was $937,437.56, and the total amount of attorney fees and costs at that time was $367,075.88. Defendant then filed a motion to dismiss plaintiff's action for statutory damages and to strike plaintiff's attorney fee petition. Following a hearing, on January 12, 2016, the circuit court granted defendant's motion and dismissed plaintiff's action in its entirety. In so doing, the circuit court relied on *Thomas v. Weatherguard Construction Co.*, 2015 IL App (1st) 142785, to hold that plaintiff was foreclosed from recovering statutory interest "because it would give retroactive effect to the amendments of the [Act]." The circuit court further held that, where plaintiff failed to recover any damages in his claim under section 14(a) of the Act, he was not entitled to any attorney fees because "the law is clear that if you—a plaintiff who leaves the Court empty-handed is not entitled to fees."

¶ 7    This appeal followed.

¶ 8                                      ANALYSIS

¶ 9                                 I. Statutory Damages

¶ 10    Plaintiff contends that the circuit court erred in dismissing his statutory damages claim as an improper retroactive application of the amendment to section 14(a) of the Act. Plaintiff argues that he was not seeking retroactive application of the amendment where he sought statutory damages only from the date the amendment became effective until the date defendant paid his outstanding wages. Plaintiff maintains that, even though his action for the improper withholding of wages accrued prior to the amendment, his action for statutory damages remained proper as a prospective application of the amendment. Plaintiff, therefore, insists the circuit court improperly applied *Thomas* in dismissing his claim.

¶ 11    The resolution of the question before us requires the interpretation of the amendment to section 14(a) of the Act. We, therefore, review this matter *de novo*. *Thomas*, 2015 IL App (1st) 142785, ¶ 63.

¶ 12    The legislature amended section 14(a) of the Act (Pub. Act 96-1407 (eff. Jan. 1, 2011)) to provide:

"Any employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees." 820 ILCS 115/14(a) (West 2010).

¶ 13    In determining whether an amendment applies prospectively or retroactively, we follow the approach established by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). Under the first step of the analysis, "if the legislature has clearly indicated the temporal reach of the amended statute, that expression of legislative intent must be given effect, absent a constitutional prohibition." *People ex rel. Madigan v. J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 29. Under the second step of the analysis, if the amendment

contains no express provision regarding its temporal reach, "the court must go on to determine whether applying the statute would have a retroactive impact." *Id.* If retroactive application of the statute "would impair rights a party possessed when [acting], increase a party's liability for past conduct, or impose new duties with respect to transactions already completed," " 'the court must presume that the legislature did not intend that it be so applied.' " *Id.* ¶ 30 (quoting *Caveney v. Bower*, 207 Ill. 2d 82, 91 (2003)). Illinois courts, however, rarely look beyond the first step of the *Landgraf* analysis because an amendatory act without a clear indication of legislative intent regarding its temporal reach will be presumed to have been framed in the view of the provisions of section 4 of our Statute on Statutes (5 ILCS 70/4 (West 2012)). *Caveney*, 207 Ill. 2d at 94. Section 4 of the Statute on Statutes "represents a clear legislative directive as to the temporal reach of statutory amendments and repeals: those that are procedural in nature may be applied retroactively, while those that are substantive may not." *Id.* at 92.

¶ 14      In the case at bar, this court most recently recognized in *Gilmore v. Carey*, 2017 IL App (1st) 153263, that the General Assembly intended the amendment in question not have effect until January 2011, despite having signed the bill in July 2010. *Id.* ¶ 39. " '[A] statute that has an express delayed implementation date but is otherwise silent as to temporal reach will be applied prospectively.' " *Id.* (quoting *People ex rel. Alvarez v. Howard*, 2016 IL 120729, ¶ 23). "Here, the General Assembly did not even want the amendment to be effective from July 2010 to January 2011, so we have clear evidence that it intended that the amendment be applicable only to proceedings commenced on or after the date it became effective." *Id.* As a result, we agree with the circuit court that the amendment should be applied prospectively only.

¶ 15      As stated, plaintiff does not challenge the ability to apply the amendment in a retroactive fashion. Rather, plaintiff insists that his claim for statutory damages does not require retroactive application of the amendment where he seeks damages only for the time period from January 2011, when the amendment became effective, until December 23, 2014, when defendant paid the outstanding wages.

¶ 16      It is uncontested that plaintiff was last paid sometime prior to December 20, 2010, the date he ceased employment with defendant, which was before the January 1, 2011, effective date of the amendment. The language of the statute provides for damages for "each month following the date of payment during which such underpayments remain unpaid." 820 ILCS 115/14(a) (West 2010). Because plaintiff's last date of payment was sometime before the effective date of the amendment, plaintiff's action for damages accrued prior to the amendment. Accordingly, in order to award plaintiff the statutory damages established by the amendment, the amendment would require retroactive application. Contrary to plaintiff's argument, we do not believe the legislature intended to allow the amendment to be applied piecemeal. In other words, there is nothing in the language of the statute that would allow a court to apply the amendment only to that portion of time for which plaintiff remained unpaid after the effective date of the amendment. We recognize that the statute includes a provision that "[e]ach day during which any violation of this Act continues shall constitute a separate and distinct offense" (820 ILCS 115/14 (West 2010)); however, plaintiff was entitled to damages as a result of nonpayment of his wages as of December 20, 2010, at the latest. The "separate and distinct offense[s]" began occurring after the last date of payment, which undeniably was prior to the amendment's effective date. As a result, plaintiff's claim for statutory damages would

require impermissible retroactive application of the statute. We, therefore, conclude that the circuit court properly dismissed plaintiff's claim for statutory damages.

¶ 17                                                II. Attorney Fees

¶ 18      Plaintiff next contends the circuit court erred in denying his request for attorney fees. Plaintiff briefly argues that he is entitled to attorney fees in the Illinois action because his statutory damages claim did not require retroactive application of the section 14(a) amendment and additionally argues that he was not collaterally estopped from collecting attorney fees in the Iowa action.

¶ 19      Section 14(a) of the Act provides, in relevant part, that "[i]n a civil action, such employee shall also recover costs and all reasonable attorney's fees." 820 ILCS 115/14(a) (West 2010). Whether plaintiff was entitled to attorney fees is a question of law, which we review *de novo*. See *Melton v. Frigidaire*, 346 Ill. App. 3d 331, 335 (2004).

¶ 20      With regard to plaintiff's request for attorney fees related to the Illinois action, in its April 10, 2015, order, the circuit court held that plaintiff was not entitled to attorney fees under the Act where he was not successful in being awarded the 2% statutory damages. We agree.

¶ 21      Although we determined that section 14(a) did not apply to plaintiff's case, he still could have sought attorney fees under the Attorneys Fees in Wage Actions Act (705 ILCS 225/1 (West 2010)). More specifically, prior to the 2011 amendment of the Act, the Attorneys Fees in Wage Actions Act provided plaintiff a method to obtain attorney fees whenever an "employee brings an action for wages earned and due and owing according to the terms of the employment." 705 ILCS 225/1 (West 2010). That said, the law in Illinois is clear that a plaintiff is not entitled to double recovery. See *Schandelmeier-Bartels v. Chicago Park District*, 2015 IL App (1st) 133356, ¶ 44.

¶ 22      In this case, plaintiff filed his claim for outstanding wages as a breach of contract action in Iowa. He also filed the underlying action under section 14(a) of the Act in Cook County. We recognize that the Illinois action was filed prior to the jury verdict in the Iowa case; however, it is undisputed that the Illinois action was based on the same outstanding wages sought in the Iowa case, which ultimately were awarded by the Iowa jury. Accordingly, plaintiff has received all that he is entitled to recover in outstanding wages. "Having once been awarded damages for injuries by the court, [he] cannot seek compensation for those injuries again. That is so regardless of whether or not the plaintiff has recovered all that he or she might have recovered in the initial proceeding." (Internal quotation marks omitted.) *Id.*; see also *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 422 (2002) ("[i]t is well established that for one injury there should only be one recovery irrespective of the availability of multiple remedies and actions"). As a result, because we found section 14(a) did not apply to plaintiff, and he, therefore, could not receive damages thereunder, and because plaintiff already had recovered his outstanding wages in the Iowa action, plaintiff did not recover anything in the Illinois action and, accordingly, was not entitled to attorney fees under the Attorneys Fees in Wage Actions Act.

¶ 23      Turning to plaintiff's contention for attorney fees related to the Iowa action, the circuit court's March 16, 2015, order denied plaintiff's requested attorney fees based on the doctrine of collateral estoppel where the Iowa court had concluded that plaintiff could not apply the Act extraterritorially.

¶ 24    Collateral estoppel is an equitable doctrine that promotes fairness and judicial economy by preventing the relitigation of issues that have already been resolved in earlier actions. *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 76 (2001). The doctrine of collateral estoppel applies when (1) the issue decided in the prior adjudication is identical with the one presented in the current action, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party to, or in privity with a party to, the prior adjudication. *Id.*

¶ 25    Again, where we have found that plaintiff was not entitled to damages pursuant to the amended section 14(a) of the Act because application of the amendment would be impermissibly retroactive, plaintiff could have sought attorney fees under the Attorneys Fees in Wage Actions Act, which provided the ability to obtain attorney fees whenever an "employee brings an action for wages earned and due and owing according to the terms of the employment." 705 ILCS 225/1 (West 2010). "A suit brought under the [Act] falls within that category." *Thomas*, 2015 IL App (1st) 142785, ¶ 72. Because plaintiff continued to possess a method to seek attorney fees, we must determine whether the circuit court erred in dismissing his Iowa fee petition based on the doctrine of collateral estoppel.

¶ 26    The Iowa court's September 28, 2012, order dismissing plaintiff's claim for, *inter alia*, damages under the Act provided:

"The bank argues that summary judgment *** is appropriate because neither the Illinois wage claim law nor the Iowa wage claim law has extra-territorial application. Examination of the applicable statutes and review of both the bank's motion and Sommese's resistance persuades the Court that both of these divisions should be dismissed. Sommese never worked for the bank at any time in the bank's Iowa locations nor did he perform any duties for the bank relating to its business activities conducted in the state of Iowa. The legislature of neither state intended their statute to have extra-territorial application and the Court finds that summary judgment dismissing [the applicable counts] of Sommese's petition is appropriate."

¶ 27    Plaintiff insists that defendant failed to meet its "heavy burden" of demonstrating "with clarity and certainty what the prior judgment determined" and, therefore, collateral estoppel did not bar his action for the Iowa attorney fees. See *Peregrine Financial Group, Inc. v. Martinez*, 305 Ill. App. 3d 571 (1999). In an effort to demonstrate defendant cannot meet its "heavy burden," plaintiff highlights statements made by the circuit court in two proceedings following the March 18, 2015, date on which the court dismissed his Iowa attorney fee petition. We review all of the circuit court's statements and conclusions to provide a full context of the proceedings.

¶ 28    On March 18, 2015, in dismissing plaintiff's Iowa attorney fee petition, the circuit court stated:

"I'm going to deny the petition for attorneys' fees on the basis of the doctrine of collateral estoppel. I don't see a reason why the doctrine should not apply.

As I look at the three elements, the ones that are being disputed are whether the issue before this Court is the same as the issue before the Iowa Court and whether there was a final judgment on the merits. There's no dispute that the parties are the same.

As to the issue before the Iowa Court, as I look at what the Iowa Court wrote in its decision *** and as I review the defendant's summary judgment motion—I don't have

the reply here, I don't think, but clearly the Iowa Court wrote that the Illinois wage claim cannot go forward because it would impermissibly give it extraterritorial application.

And he further stated that the legislature of both Iowa and Illinois did not intend that *** their statutes have extraterritorial application.

I haven't read the entire motion for summary judgment word-for-word, nor their reply brief, but even if the defendants didn't actually use the word 'extraterritorial,' as I review the arguments, the sum and substance of it is the same.

So I find that the issue is the same; that is, whether the Illinois Wage Act claim can be applied extraterritorially. The Iowa trial court judge ruled that it cannot and, therefore, dismissed the Wage Payment Act claim.

And it's the same issue before me; that is, whether *** Mr. Sommese can obtain his attorneys' fees in connection with the prosecution of the Iowa action.

And that, in my view is the same—would require the same holding; that is, to apply the Illinois Wage Act extraterritorially, which is impermissible, at least according to the Iowa judge's ruling, which has not been appealed.

I'm not persuaded that the—that there's no final judgment on the merits. Clearly, the Iowa judge dismissed the Wage Payment Act claim under Illinois law on the basis that the plaintiff could not state a cause of action insofar as he was seeking to apply the statute extraterritorially, nor do I find there is a—that it's inequitable to apply the doctrine here, to preclude the claim for fees.

While I recognize that there is a forum selection clause, the plaintiff had the opportunity to decide which state to proceed and which claims to proceed under.

And it certainly could have proceeded on the Illinois Wage Payment Act and collection claim here in Illinois, in which case there would be no dispute that they would be entitled to—or, he would be entitled to his attorneys' fees, reasonable attorney's fees.

Similarly, you know I already applied the doctrine in favor of *** Mr. Sommese, the plaintiff, when I granted summary judgment on liability on the wage Payment Act claim.

So I'm not persuaded that it would be unfair or inequitable to apply the doctrine defensively here.

So I'm denying the petition for fees as it relates to the prosecution of the Iowa action."

¶ 29    Then, on October 28, 2015, when the parties appeared before the circuit court requesting, *inter alia*, leave to file supplemental authority on the issue of retroactive application of the Act, the court stated:

"In the course of reading your papers last time around, it struck me that while it is clear why the Iowa Trial Court dismissed the Iowa Wage Act claim, it wasn't so clear why he dismissed the Illinois Wage Act claim. And that's become apparent to me as I studied that order a little closer. And I can explain this all down the road as and when necessary. But I'm not so sure that I was correct in entering summary judgment in favor of the plaintiff based on the *** defense of collateral estoppel. And, again, it's because it's not clear to me what the judge's ruling was.

That having been said, it would still seem to me that I would still have to decide the question of whether permitting the Illinois Wage Act claim to go forward would give the statute extraterritorial effect. I probably shouldn't go down this road right now, because it's not as clear in my head as it was a couple weeks ago.

So I'll leave it at this right now. I am considering whether I was correct in that ruling. Now, you know, as it stands now, my order is what it is. If for some reason I determine I wasn't correct, I'll certainly let you folks know."

¶ 30   However, on January 12, 2016, the final hearing date before the circuit court, the court stated:

"You know, I had referenced and mentioned, I think, last time I saw you this notion that the Iowa Court's ruling, upon further review did not appear to be particularly clear on why *** the Iowa Court judge dismissed the Illinois Wage Act claim.

It's clear why he dismissed the Iowa Wage Act claim, because that would give the Iowa wage law extraterritorial application because there's no dispute that Mr. Sommese was employed in Illinois by an Illinois [location of an Iowa] bank.

Okay. But why that somehow translates to extraterritorial application of the Illinois Wage Act claim is not stated in the opinion. It's almost as though the Iowa Court concluded that any claim brought under the Illinois Wage Act must be brought in Illinois and cannot be heard by any other Court outside of Illinois.

If that's the decision of the Iowa Court, there's no authority cited for that proposition, but in any event, the plaintiff did not appeal that ruling, and now we're stuck with it.

So I'm not unsympathetic to plaintiff's plight. I think the arguments raised by defendant have merit and, in my view, are persuasive."

¶ 31   We agree with plaintiff and the circuit court that nothing in the Iowa court's order identifies why the court found application of the Act would be impermissibly extraterritorial. It is undisputed that plaintiff was asking the Iowa court to apply the Act for an action that involved an Illinois resident employed at an Illinois branch of the defendant bank. The only reason the action was filed in Iowa was to comply with the parties' employment contract. That said, the precise reasoning for the Iowa court's ruling is irrelevant under the circumstances here because the effect of that ruling was clear and certain. Critically, it is clear and certain that the Iowa court dismissed plaintiff's request for attorney fees under the Act. Equally clear is that plaintiff again relied on the Act in requesting an award of attorney fees in the circuit court of Cook County. Accordingly, the *issue*, namely, plaintiff's ability to collect attorney fees associated with the Iowa action, decided by the Iowa court is identical to the one presented in the underlying case. See *Du Page Forklift Service, Inc.*, 195 Ill. 2d at 76. Moreover, plaintiff failed to appeal the Iowa court's decision. "Public policy dictates that there be an end to litigation and that a party who contested an issue be bound by the result." *Minneman v. Minneman*, 169 Ill. App. 3d 300, 303-04 (1988) (*per curiam*) (applying collateral estoppel to bar the defendant from relitigating an issue that had been decided by an Indiana court, which the defendant had not appealed). Accordingly, we find it was clear and certain that there was an identity between the issues in both cases.

¶ 32   Finally, we find that the Iowa court's ruling dismissing plaintiff's attorney fee petition was a final adjudication on the merits. Plaintiff argues that the Iowa court's dismissal of his

attorney fee claim was the equivalent of a dismissal for lack of subject matter jurisdiction, which is not a final adjudication on the merits. The United States Supreme Court, however, has instructed that the question of whether a statute has extraterritorial application "is a merits question." *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 253-54 (2010). In other words, the matter does not involve the court's "power to hear a case" but, rather, whether the plaintiff is entitled to relief under the statute. (Internal quotation marks omitted.) *Id.* at 254. Accordingly, the question before the Iowa court in this case was whether plaintiff stated a cause of action under section 14(a) of the Act. Our courts clearly have stated that the dismissal of a complaint for failure to state a claim is an adjudication on the merits. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 303 (1998). We, therefore, find the Iowa court's dismissal of plaintiff's claim as an impermissible extraterritorial request to apply section 14(a) of the Act was a final adjudication on the merits for purposes of collateral estoppel.

¶ 33 In sum, where there was an identity to the issues between the Iowa case and the Illinois case, an undisputed identity of the parties, and a final adjudication on the merits, we conclude the circuit court properly dismissed plaintiff's claim for attorney fees for the Iowa action on the basis of collateral estoppel.

¶ 34                                          CONCLUSION

¶ 35 We affirm the circuit court's dismissal of plaintiff's complaint for relief pursuant to section 14(a) of the Act where plaintiff was not entitled to statutory damages or attorney fees thereunder.

¶ 36 Affirmed.